IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION


Wanda S. Carr,                    )      Civil Action No. 8:10-cv-02119-TLW -JDA
                    Plaintiff,    )
                                  )      **REPORT AND RECOMMENDATION**
                                  )      **OF MAGISTRATE JUDGE**
          vs.                     )
                                  )
Michael J. Astrue,                )
Commissioner of Social Security,  )
                                  )
                    Defendant.    )


     This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is

recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

     On August 31, 2006, Plaintiff protectively filed an application for DIB, alleging an

onset of disability date of May 4, 2006. [R. 11, 110–15.][2] The claim was denied initially

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Plaintiff previously filed applications for DIB and supplemental security income in July 2002. [R. 49.] Her applications were denied in an administrative law judge ("ALJ") decision dated September 6, 2005. [R. 49–60.] The ALJ found Plaintiff had the following severe impairments: epicondylitis of the right elbow and carpal tunnel syndrome [R. 59, Finding 3], but retained "the residual functional capacity to perform a range of light work, restricted to preclude constant pushing or pulling with the right upper extremity; more than occasional climbing or crawling; and no constant reaching in any direction or gross manipulation with the right upper extremity" [R. 59, Finding 6]. Plaintiff did not appeal this previous decision; therefore, the ALJ in this case found the previous decision final and binding and entitled to significant weight. [R. 17.]

on December 29, 2006 [R. 66–70] and was denied on reconsideration by the Social Security Administration ("the Administration") on April 9, 2007 [R. 74–76]. On April 24, 2007, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 77], and on March 18, 2009, ALJ William F. Pope conducted a de novo hearing on Plaintiff's claims [R. 24–41].

The ALJ issued a decision on May 5, 2009, finding Plaintiff not disabled under §§ 216(i) and 223(d) of the Social Security Act. [R. 8–23.] The ALJ found Plaintiff had severe impairments of depression, anxiety, and a history of surgeries for right elbow epicondylitis and carpal tunnel syndrom [R. 13, Finding 3], but Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered the impairments of Listings 12.04 and 12.06 [R. 13, Finding 4]. The ALJ found  Plaintiff retained the residual functional capacity ("RFC") to carry out simple, routine tasks in a supervised environment with no requirement for interaction with the public or "team"-type interaction with co-workers.  [R. 15, Finding 5.]  The ALJ also found Plaintiff should not constantly push or pull with her right upper extremity, should not crawl or climb ladders or stairs, and should avoid hazards such as unprotected heights and dangerous machinery. [*Id.*]  The ALJ also determined Plaintiff was unable to perform any past relevant work [R. 21, Finding 6], but jobs existed in significant numbers in the national economy Plaintiff could perform [R. 22, Finding 10].

Plaintiff requested Appeals Council review of the ALJ's decision [R. 7], but the Council declined [R. 2–6].  Plaintiff filed this action for judicial review on August 13, 2010. [Doc. 1.]

**THE PARTIES' POSITIONS**

Plaintiff argues the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence. [Doc. 8 at 2.] Specifically, Plaintiff contends the ALJ erred by:

1. summarily dismissing the opinion of Plaintiff's long-standing treating psychologist, Robert A. Moss, Ph.D. [*id.* at 3–13];

2. ignoring and failing to consider that Plaintiff received Worker's Compensation benefits and settled her Workers' Compensation claim during the pendency of the Social Security claim and prior to the hearing [*id.* at 13–14]; and

3. failing to incorporate the limitations by the non-examining state agency consultant and by the non-treating consultative examiner and the prior right extremity limitations mandated by the prior ALJ decision into the RFC that constituted the basis for his hypothetical to the vocational expert [*id.* at 14–18].

The Commissioner contends, however, the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence. [Doc. 11 at 11.] Specifically, the Commissioner argues

1. the ALJ reasonably found Plaintiff did not have an impairment that met the requirements of Listings 12.04 and 12.06 [*id.* at 12–15];

2. the ALJ reasonably found Plaintiff retained the RFC to perform a range of work [*id.* at 15–22];

3. the ALJ reasonably found Plaintiff could perform jobs that existed in significant numbers in the national economy [*id.* at 22–23];

4.       substantial evidence supports the ALJ's decision, even when considering the additional evidence presented to the Appeals Council [*id.* at 23–24].

## **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was

appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. &*

*Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the

9

[Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.     *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.     *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

---

[4]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(e)

### E.  *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's

condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See  Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing

observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:

...

**FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI. Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Treating Psychologist Opinion

Plaintiff argues the ALJ erred by summarily dismissing the opinion of Plaintiff's long-standing treating psychologist, Robert A. Moss, Ph.D., that Plaintiff was disabled and/or functionally impaired to a degree that would preclude work activity, and, in so doing, ignored the prevailing case law and the regulatory mandate of 20 C.F.R. § 404.1527(d). [Doc. 8 at 3–13.]  The Court disagrees.

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527) ("the *Johnson* factors").  Courts typically "accord 'greater weight to the

testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Finally, the ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity. 20 C.F.R. § 404.1527(e).[6]

### Dr. Moss's Opinion

In May 2006, Plaintiff was the victim of an armed robbery at her work committed by two hooded black men; as a result, she was referred to counseling. [R. 208, 220.] On May 15, 2006, Adrienne Logan, a social worker, opined Plaintiff exhibited the "classic symptoms of Posttraumatic Stress Disorder" ("PTSD") and that she did "not feel it is in [Plaintiff's] best interests to return to work at this time." [R. 220.] Subsequently, Plaintiff was referred to and treated by Dr. Moss, attending sessions on a weekly basis from May 2006 through at least February 2009. [R. 223–24, 291–94, 297–303, 338–41.]

---

[6] "[B]ecause the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant," the general rule is that a claimant's treating physicians' opinions are afforded great weight. *Johnson*, 434 F.3d at 654 (quoting *Mastro*, 270 F.3d at 178). An ALJ, though, can give a treating physician's opinion less weight "in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178. Further, in undertaking review of the ALJ's treatment of a claimant's treating physicians' opinions, the reviewing court must remain mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

In June 2006, Plaintiff reported to Dr. Moss for a psychological evaluation. [R. 208.] Dr. Moss administered testing, but the results were invalid, as Plaintiff attempted to use her responses to exaggerate or fabricate symptomatic complaints. [R. 209.] Dr. Moss's impression was probable PTSD, probable major depression, and possible malingering. [R. 209–10.] He concluded it was not possible to provide a firm diagnosis due to the invalid test results but that Plaintiff's self-report was consistent with the diagnoses of PTSD and depression. [*Id.*] Dr. Moss noted Plaintiff had a traumatic event that could have led to PTSD and that there was evidence that she was depressed. [R. 210.] Dr. Moss recommended fifteen sessions of treatment and hoped Plaintiff would show improvement. [*Id.*] He also recommended she continue taking Cymbalta. [*Id.*]

In late June 2006, Dr. Moss noted Plaintiff had increased problems after seeing at the courthouse one of the men who robbed her and that she experienced problems when seeing black men. [R. 224.] In July 2006, Plaintiff was doing better, but she continued to have problems when encountering black males. [*Id.*] Plaintiff continued to do well and benefit from her sessions with Dr. Moss. [R. 223.]

During December 2006, Plaintiff was hospitalized for five days for treatment and a psychiatric evaluation; Plaintiff had stopped taking her medication because her insurance refused to pay for it. [R. 272, 298.] She was put back on medication and improved. [R. 273.] Plaintiff followed up with Dr. Moss who decided to take a different therapeutic approach, with the goal of having Plaintiff become more comfortable around black males. [R. 294.] By February 2007, Plaintiff reported she was having less anxiety around black males, but she reported some health problems, such as allergies to medications and problems with her left lung. [R. 292.] By March 2007, Plaintiff was able to go to Walgreens

alone as well as on some other trips [*id.*], reporting she felt no anxiety around a black male psychology student [R. 291].

In April 2007, Dr. Moss completed a statement in which he opined Plaintiff was "permanently and totally disabled from work as a result of her work injury of 5/4/06." [R. 304.] Dr. Moss wrote:

> I think the best way to respond is to say that had the robbery not occurred with the resulting PTSD, she would be working today. I believe it is more probable than not that she will not be able to return to any work situation. She had pre-existing psychological problems that contributed to her disability from the robbery, but the robbery is the critical factor that has led to her psychological disability.

[R. 304.]

Plaintiff had additional episodes of distress in May 2007, when the men who robbed her were going to trial. [R. 299.] In July 2007, Plaintiff reported increased anger feelings when driving and seeing young black males. [R. 300.] Plaintiff also reported additional physical problems and was irritable and despondent. [R. 301.] Plaintiff continued to have problems tied to her family, and Dr. Moss asked her to consider treatment at the mental health center. [*Id.*] Plaintiff continued to struggle with stressors through the end of 2007 and beginning of 2008. [R. 302–03.]

On December 13, 2007, Dr. Moss completed a Psychiatric Review Technique form for the period June 7, 2006 to December 13, 2007, and opined Plaintiff met Listings 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders. [R. 305.] Dr. Moss concluded Plaintiff's depression and PTSD caused moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, and pace; and one or two episodes of decompensation of

extended duration.  [R. 305–12.]  In a letter dated June 8, 2009, Dr. Moss discussed his

rating of mild impairment in memory and concentration and noted he did not believe this

would preclude work in and of itself.  [R. 342–44.]  However, he found Plaintiff would be

unreliable in attendance and would stay in bed for several days and not shower or dress.

[*Id.*]

### Weight Assigned to Dr. Moss's Opinion by the ALJ

In evaluating the opinion evidence from Dr. Moss, the ALJ noted

> I give little weight to the statement of permanent and total
> disability submitted by Dr. Robert Moss who reported that if the
> robbery had not occurred, the claimant would be working
> today.  As noted, Dr. Moss pointed out in June 2006 that the
> claimant scored high on malingering, exaggeration, and
> fabrication of complaints and consistently endorsed ideas to
> portray herself in an especially negative manner.  She also
> showed signs of some deliberate distortion (Exhibit 1F, page
> 2).  Dr. Moss's treatment notes show that she responded well
> and quickly to conservative therapy and treatment.  Dr. Moss's
> own findings do not support, and in fact actually contradict, his
> statement of disability.  Accordingly, I give little weight to that
> conclusion.

[R. 20.]  The ALJ further noted his findings were generally consistent with the conclusions

of consultative psychologist John C. Whitley, III, Ph.D., who opined Plaintiff had fair ability

to perform work in a low demand setting but that Plaintiff would be precluded from working

directly with the public; the ALJ's findings were also generally consistent with the state

agency physicians who reviewed the record and found Plaintiff's impairments were severe

but did not preclude simple tasks and that Plaintiff would require a low stress environment

away from the public.  [R. 20, 231, 266.]

*Analysis*

Contrary to Plaintiff's contention, the Court concludes the ALJ adequately and properly considered all of the record evidence and articulated a basis for the weights assigned to the medical evidence of record, including his decision to give little weight to Dr. Moss's opinion of disability. Moreover, the ALJ properly evaluated Dr. Moss's opinion pursuant to 20 C.F.R. § 404.1527. The ALJ discounted Dr. Moss's statement of disability as inconsistent with his own treatment notes and with his previous findings of malingering, exaggeration, and fabrication of complaints. Moreover, the Court notes Dr. Moss's alleged finding of disability is equivocal and not conclusive: "I think it is *more probable than not* that she will not be able to return to any work situation." [R. 304.]

Further, the ALJ properly explained his rejection of social worker Adrienne Logan's opinion that "it is not in the claimant's best interest to return to work at this time" as vague, unspecific, and unsupported. [R. 20.] Likewise, contrary to the listing analysis performed by Dr. Moss, the ALJ conducted his own listing analysis as required and found Plaintiff failed to meet the Paragraph B and C criteria of Listings 12.04 and 12.06. [R. 14–15.] Specifically, the ALJ found Plaintiff has mild restrictions in daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, and pace; and failed to show any episodes of decompensation for an extended duration during the period at issue.[7] [*Id.*] While Plaintiff goes to great lengths to summarize Dr. Moss's treatment

---

[7] The ALJ noted Plaintiff was hospitalized but explained the hospitalization "was precipitated by lack of medication[,] lasted for only a brief period[,] and is not considered an episode of decompensation for an extended period." [Doc. 14.]

notes and findings, she fails to direct the Court to any findings that would challenge, contradict, or refute the ALJ's determination that Plaintiff could perform some work.

Lastly, the Plaintiff contends the ALJ's decision is in error for failing to specifically address the factors in 20 C.F.R. § 404.1527(d), i.e, length of treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization; and other factors. Upon consideration, however, the Court finds that any failure to explicitly analyze Dr. Moss's opinion pursuant to 20 C.F.R. § 404.1527 is harmless error. *See, e.g.*, *Perdue v. Astrue*, 2011 WL 6415490, at *17 (S.D.W. Va. Dec. 21, 2011) ("[C]ourts have applied a harmless error analysis to administrative decisions that do not fully comport with the procedural requirements of the agency's regulations, but for which remand would be merely a waste of time and money. In general, remand of a procedurally deficient decision is not necessary absent a showing that the [complainant] has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses . . . [, which] constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." (internal quotation marks and citation omitted)); *see also Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal quotation marks and citation omitted)). Dr. Moss's treatment notes are a part of the record and have been considered by the ALJ. Plaintiff has failed to explain how the ALJ's failure to specifically explain his consideration

23

of the above factors affects his final determination. Therefore, consistent with the above-cited case law, the Court finds this failure to be error harmless.

Accordingly, the ALJ properly considered all of the record evidence and articulated a reasonable basis for discounting Dr. Moss's opinion. Consequently, the weight the ALJ assigned to the medical opinions is supported by substantial evidence.

**Consideration of Worker's Compensation Settlement**

Plaintiff next contends the ALJ erred by ignoring and failing to consider that Plaintiff received Workers' Compensation benefits and settled her Workers' Compensation claim during the pendency of the Social Security claim and prior to the hearing. [Doc. 8 at 13–14.] The Court disagrees.

Section 404.1512 of Title 20 of the Code of Federal Regulations provides the definition of evidence and provides, generally, that a claimant is required to prove her disability by bringing to the Administration's attention everything that shows she is disabled, e.g., medical and other evidence of medical impairment. The section defines "evidence" as "anything [the claimant] or anyone else submits to [the Administration] or that [the Administration] obtain[s] that relates to [the claimant's] claim." *Id.* The section also provides examples of evidence, including "[d]ecisions by any governmental or nongovernmental agency about whether [the claimant is] disabled." *Id.* at 404.1512(b)(5). Contrary to Plaintiff's argument, while this regulation specifically states Plaintiff is required to provide the information, it gives no guidance on how the ALJ is to consider the evidence. However, the Fourth Circuit has held that "weight should be given to the findings of the [Workers' Compensation] Commission even though same is not determinative of the

issue." *Hicks v. Gardner*, 393 F.2d 299, 301 (4th Cir. 1968); *see* 20 C.F.R. § 404.1504 ("A decision by any . . . other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled. . . . Therefore, a determination made by another agency that you are disabled . . . is not binding on us.").

First, the Court notes Plaintiff never made her Worker's Compensation opinion a part of the record before the ALJ and does not even allege she made this part of the record. [*See* Doc. 8 at 13–14 (noting Dr. Moss's notes contain multiple references to the Workers' Compensation claim and settlement but never alleging the Workers' Compensation opinion was part of the record).] Moreover, Plaintiff has failed to advise the Court how the Workers' Compensation opinion would have affected or changed the decision of the ALJ had it been considered. Because Plaintiff failed to make the Worker's Compensation opinion a part of the record before the ALJ, the Court cannot find error in the ALJ's failure to consider the opinion.

**Vocational Expert Testimony**

Plaintiff argues the ALJ erred by failing to incorporate (1) the limitations by the non-examining state agency consultant; (2) the limitations by the non-treating consultative examiner; and (3) the right extremity limitations mandated by the prior ALJ decision into the RFC that constituted the basis for the ALJ's hypothetical to the vocational expert. [Doc. 8 at 15–17]. Although Plaintiff argues the ALJ failed to incorporate these limitations into the RFC, a review of Plaintiff's brief reveals Plaintiff's real allegation of error is with the ALJ's hypothetical to the vocational expert. [Doc. 8 at 14–18.]

As previously stated, once a claimant reaches Step 5 of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs

in the national economy that the claimant could perform. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). Here, Plaintiff suffers from nonexertional limitations; therefore, the grids could serve only as guidelines for the ALJ's determination of whether Plaintiff could perform work that exists in the national economy. *See Gory*, 712 F.2d at 931. Where the grids may serve only as guidelines, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a (2001); *see Walker*, 889 F.2d at 49–50.

In his hypothetical to the vocational expert, the ALJ provided the following:

> . . . I ask you to assume the following, please, an individual with the claimant's age, education and past job experience who is limited to performing work with restrictions that require simple, routine tasks in a supervised environment. No interaction with the public or team type interaction with co-workers. No constant pushing, no constant pulling with the right upper extremity. There would be no crawling or climbing of ladders or scaffolds. This would be because of the epicondylitis of the right elbow of course. No constant reaching with the right upper extremity. And no gross manipulation with the right upper extremity. And also avoidance of hazards such as unprotected heights and dangerous machinery, even though we know that the claimant drives and can drive alone.

[R. 38.] The ALJ, in response to questions from the vocational expert, clarified that "no gross manipulation with the right upper extremity" meant "no constant gross manipulation." [R. 39.]

For a vocational expert's opinion "to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker*, 889 F.2d at 50 (citations omitted). Moreover, the ALJ must provide sufficient reasoning for a

reviewing court to determine whether the ALJ properly applied the law. *See Myers*, 611 F.2d at 982; *see also Smith*, 782 F.2d at 1181–82 (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why).

First, Plaintiff argues the ALJ failed to incorporate the limitations by the non-examining state agency consultant. Dr. Horn, a state agency consultant, observed Plaintiff would be limited to carrying out very short and simple instructions in a low stress environment. [R. 270.] The ALJ stated his decision was consistent with the state agency medical consultant's findings. Plaintiff provides no suggestion or explanation on how the ALJ's decision, RFC assessment, or hypothetical to the vocational expert is inconsistent with the findings of the state medical consultant. Moreover, the ALJ took into consideration Plaintiff's need to be in a low-stress environment and limited to short, simple instruction and included in the hypothetical to the vocational expert that Plaintiff would be limited to performing work with restrictions that require simple, routine tasks in a supervised environment with no interaction with the public or team type interaction with co-workers.

Next, Plaintiff argues the ALJ failed to incorporate the limitations by the non-treating consultative examiner. Mr. Adams performed a vocational evaluation of Plaintiff in connection with her claim for worker's compensation. [R. 21, 125–30.] Mr. Adams was not a treating source. [R. 21] According to the ALJ, Mr. Adams made assumptions regarding Plaintiff's credibility and gave controlling weight to such opinions, which is more consistent with an administrative finding than a medical or vocational opinion. [*Id.*] The ALJ gave Mr. Adams's findings that Plaintiff showed slow performance on dexterity testing in her right hand little weight as his findings were inconsistent with the remainder of the evidence. [R.

17, 21.]  The ALJ concluded the evidence failed to document Plaintiff required ongoing treatment or therapy since her previous remote 1999 surgeries, and the ALJ found the medical record did not indicate an expectation of significant, permanent impairment or significant, continuing limitation of function following those surgeries.  [R. 20.]  Further, the ALJ noted Mr. Adams indicated that the test he performed on Plaintiff was a "self reporting" evaluation and that Plaintiff showed signs of significant exaggeration of her symptoms during a prior self-reporting evaluation.  [*Id.*]  Although the ALJ did not include limitations for constant reaching or gross manipulation in the RFC, he did include those limitations in the hypothetical posed to the vocational expert [R. 38], and even with those limitations, the vocational expert opined there would be jobs in the national economy Plaintiff could perform [R. 38–40].

Finally, Plaintiff argues the ALJ failed to incorporate the right extremity limitations mandated by the prior ALJ decision.  In considering the previous decision of September 6, 2005, the ALJ noted the findings of the ALJ but also noted that Plaintiff had returned to the performance of substantial gainful activity after this decision.  [R. 16.]  The ALJ also noted the medical records did not document an impairment of Plaintiff's right hand and further noted there were no signs of deterioration of Plaintiff's upper right extremity condition since the previous decision, where the ALJ found Plaintiff had full use of her right upper extremity except for limitations to light work against constant pushing, pulling, reaching, and gross motor manipulation.  [R. 17.]  The ALJ found the prior decision of the Administration well supported by the evidence and entitled to significant weight.  [*Id.*] Lastly, the ALJ concluded

> [Plaintiff] has submitted no evidence since [the last] decision
> which would suggest deterioration in her upper right extremity
> condition and her low or slow performance during vocational
> testing is not substantiated by medical findings with no ongoing
> dexterity problems reported or treated by any treating or
> examining physicians.

[R. 17.] Consequently, the ALJ provided specific reasons for failing to include the "pushing, pulling, reaching and gross manipulation" limitation in his RFC. The Court notes, however, that this limitation was included in the hypothetical to the vocational expert [R. 38], and even with those limitations, the vocational expert opined there would be jobs in the national economy Plaintiff could perform [R. 38–40]. Based on the above, the Court finds the ALJ adequately explained his treatment of the September 2005 findings. Accordingly, Plaintiff has failed to establish the hypothetical posed to the vocational expert did not fairly set out all of Plaintiff's impairments or was not based upon a consideration of all the evidence in the record. *See Walker*, 889 F.2d at 50.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 23, 2012
Greenville, South Carolina